Barbara SCHAFFER, on behalf of
LASERSIGHT INCORPORATED
Plaintiff,

v.

CC INVESTMENTS, LDC, Castle Creek
Partners, LLC, Societe Generale
Shepherd Investments International,
Ltd., Stark International, Brian J.
Stark, Michael A. Roth, and Laser-
sight Incorporated, Defendants.

No. 99 Civ.2821(VM).

United States District Court,
S.D. New York.

Oct. 2, 2003.

Glenn F. Ostrager, Joshua Seth Broit-
man, Ostrager, Chong, Flaherty & Ono-
frio, PC, Paul D. Wexler, Bragar, Wexler,

Eagel & Morgenstern, LLP, New York City, for Barbara Schaffer, Plaintiff.

Scott Edelman, Milbank Tweed Hadley & McCloy, Scot A. Edelman, Milbakn, Tweed, Hadley & McCloy LLP, New York City, for CC Investments, LDC, Castle Creek Partners, LLC, Defendants.

Steven Carl Bennett, Jones, Day, Reavis & Pogue, New York City, for Societe Generale, Defendant.

Matthew Lawrence Craner, Daniel J. Kramer, Schulte Roth & Zabel, LLP, New York City, for Shepard Investments International, Ltd., Stark International, Brian J. Stark, Michael A. Roth, Defendants.

Gary Meyerhoff, Sonnenschein, Nath & Rosenthal, New York City, for Lasersight Incorporated, Defendant.

### DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Barbara Schaffer ("Schaffer") brings this action pursuant to Section 16(b) of the Securities Exchange Act of 1934 (the "Act"), 15 U.S.C. § 78b (" § 16(b)"), for disgorgement of short-swing profits al-legedly obtained by Defendants[1] acting as a group in violation of that section of the Act. The Court has issued several rulings concerning various aspects of this case,[2] but focuses in this Decision and Order on one previously undiscussed matter that has recently arisen.

On September 5, 2003, Lasersight announced that it had filed for protection under the United States bankruptcy laws in the United States Bankruptcy Court, Middle District of Florida, Orlando Division.[3] Defendants argue that as a result, all further proceedings in the action before this Court should be automatically stayed pursuant to 11 U.S.C. § 362 (" § 362"). Schaffer counters that such a stay is inapplicable because her § 16(b) claim does not involve property of the debtor, Lasersight, which is named in this action only as a nominal defendant. Surprisingly, there is little guidance on this issue from either other courts or commentators.[4] However, after careful consideration, the Court agrees with Schaffer.

Section 362(a) provides in pertinent part that "a petition filed under section 301,

---

1. For purposes of this Decision and Order, "Defendants" refers collectively to three aggregations of investors: CC Investments, LDC and Castle Creek Partners, L.L.C.; Societe Generale, the parent corporation of SG Cowan Securities Corp. (formerly known as Societe Generale Securities Corp.); and Shepherd Investments International, Ltd., Stark International, Brian Stark, and Michael Roth. However, this definition excludes Lasersight Inc. ("Lasersight"), the issuer of the relevant securities, which is named as a nominal defendant in this action.

2. *See, e.g., Schaffer v. CC Inv., LDC,* 280 F.Supp.2d 128 (S.D.N.Y.2003); *Schaffer v. CC Inv., LDC,* No. 99 Civ. 2821, 2002 WL 31869391 (S.D.N.Y.2002); *Schaffer v. CC Inv., LDC,* 205 F.R.D. 158 (S.D.N.Y.2002); *Schaffer v. CC Inv., LDC,* 153 F.Supp.2d 484 (S.D.N.Y. 2001); and *Schaffer v. CC Inv., LDC,* 115 F.Supp.2d 440 (S.D.N.Y.2000).

3. *See Lasersight Incorporated,* Case No. 03–10371–6B1.

4. Both parties refer to *AEC One Stop Group, Inc. v. Bain Capital Fund IV, L.P.,* No. 96 Civ. 6664, 2000 WL 1279807 (S.D.N.Y. Sept. 11, 2000), where the Court noted that a § 16(b) action involving Schaffer was automatically stayed pursuant to § 362, and a motion before the bankruptcy court to lift the stay was denied. The matter was never appealed to this Court, and indeed, Judge Cederbaum had observed on the record at a November 20, 1998 conference on the matter that if it had been, she may have lifted the stay. As a result, the Court is reluctant to rely on either the opinion or Judge Cederbaum's comments on the record, and instead conducts its own independent analysis of the issue.

302, or 303 of this title ... operates as a stay, applicable to all entities, of ... any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). The key phrase for purposes of resolving the instant matter is "property of the estate," which is defined in § 541 of the Bankruptcy Code as including "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).[5]

■ In connection with § 362, federal courts have interpreted § 541 "to prevent individual shareholders and creditors from suing to enforce a right of the corporation when that corporation is in bankruptcy," thus leaving such rights to be vindicated by the bankruptcy trustee. *Cumberland Oil Corp. v. Thropp*, 791 F.2d 1037, 1042 (2d Cir.1986); *see also Kommanditselskab Supertrans v. O.C.C. Shipping, Inc.*, 79 B.R. 534, 540 (S.D.N.Y.1987) (holding that a § 362 stay "prevents individual creditors from suing to enforce a right of action belonging to the corporation when that corporation is in bankruptcy."). This rule serves to ensure that the entire property constituting the debtor's estate remains intact and subject to management by the trustee and control of the bankruptcy court for the purposes of protecting the rights and interests of all creditors in an orderly and equitable distribution of the estate's assets. *See In re MortgageAmerica Corp.*, 714 F.2d 1266, 1274 (5th Cir. 1983) ("Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally."). Piecemeal resolution of claims and parceling of the estate's property through collateral litigation outside of the bankruptcy proceedings would undermine these objectives. *See id.* ("Without [the § 362 stay],

certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors.").

■ However, consistent with the purpose of this rule, "the stay does not apply to suits brought to recover rights of action which belong to the plaintiff-creditor." *Kommanditselskab*, 79 B.R. at 540. Thus, if Schaffer is suing to recover on a right of action belonging to Lasersight, the automatic stay would operate, whereas if Schaffer is suing to recover on a right of action belonging to Schaffer personally, the stay would not operate. *See id.*

Many courts have ruled that the bankruptcy estate includes derivative actions brought by shareholders, and thus "[a] corporation's filing for bankruptcy cuts off a shareholder's ability to bring a derivative claim." *In re General Development Corp.*, 179 B.R. 335, 338 (S.D.Fla.1995); *see also Delgado Oil Co., Inc. v. Torres*, 785 F.2d 857, 860 (10th Cir.1986) (holding that the § 541 estate includes all derivative actions to recover damages for, among other things, misconduct by officers); *Mitchell Excavators, Inc. v. Mitchell*, 734 F.2d 129, 131 (2d Cir.1984) (holding that shareholder's derivative suit is property of the estate). However, although some courts use the term "derivative" to describe § 16(b) lawsuits, under the pure application of the concept, a § 16(b) action is not a derivative action in the way that a typical shareholder derivative action is. *See Dottenheim v. Murchison*, 227 F.2d 737, 738 (5th Cir. 1955) ("[Section 16(b) ] creates a new cause of action, which, while similar in some respects to a secondary or derivative right, is not such a right at all."); *Blau v. Oppenheim*, 250 F.Supp. 881, 885 (S.D.N.Y.1966)

5. Section 541 also lists certain exceptions to      this definition, which are not relevant here.

(Weinfeld, J.) ("Preliminarily it should be emphasized that strictly speaking a section 16(b) suit to recover short-swing profits is not derivative, although some of the cases so describe it.").

■ Indeed, while there are some similarities between a § 16(b) case and a traditional shareholder derivative action, including the elements that both actions involve as the lead plaintiff a stockholder prosecuting the underlying claim after the corporation declines to do so and that any recovery inures to the issuer's benefit, § 16(b) suits and derivative actions differ in more fundamental ways. First, a § 16(b) cause of action is a statutory enabling right directly empowering the shareholder to sue; it is not a derivative or secondary right grounded on rights and interests possessed primarily by the corporation and emanating from common law. *See Dottenheim,* 227 F.2d at 738 ("[Section 16(b)] creates a new cause of action, which . . . is in reality a primary right. This is so because the statute which creates it makes it so."); *Blau,* 250 F.Supp. at 885 ("[A] section 16(b) suit . . . is not derivative . . . but one to enforce a primary right created by the Act in favor of the issuer as well as its security holders."); *Pottish v. Divak,* 71 F.Supp. 737, 738–39 (S.D.N.Y. 1947) ("Section 16(b) of the Securities Exchange Act of 1934 creates a new cause of action which did not exist at common law or by virtue of the provisions of any statute."). In other words, the § 16(b) action amounts to an *enforcement* right that, if successful, enables the corporation to gain from the redistribution of insiders' illicit profits to which the corporation had no right of recovery under common law causes of action.

Furthermore, as reflected in the plain language of the statute, § 16(b) was enacted because of the "national public interest which makes it necessary to provide for regulation and control of such transactions." 15 U.S.C. § 78b; *see also Feder v. Martin Marietta Corp.,* 406 F.2d 260, 262 (2d Cir.1969) ("The purpose of section 16(b) as succinctly expressed in the statute itself is to prevent 'unfair use of information' by insiders and thereby to protect the public and outside stockholders."). By contrast, the underlying scope and purposes of the pure derivative cause of action serve broader objectives. Such an action enables the shareholder to prosecute a broader range of wrongdoing by corporate officers or agents committed against the corporation on the basis of recognized causes of action the corporation itself would have under the common law, and thereby to vindicate more extensive rights and interests on behalf of the corporation. *See In re Penn Central Securities Litigation,* 347 F.Supp. 1324, 1326 (E.D.Pa.1972) (quoting 13 W. Fletcher, *Corporations* § 5911 (1970)) ("The action is derivative, *i.e.,* in the corporate right, if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock or property without any severance or distribution among individual holders, or if it seeks to recover assets for the corporation or to prevent the dissipation of its assets.").

■ Here, these distinctions support the argument that, for the purposes of § 362, a § 16(b) cause of action is one primarily belonging to Schaffer. First, the right to sue under § 16(b) is Schaffer's primary right created by statute, not a derivative right emanating from interests of the corporation which would then remain with or revert to the corporation's estate upon bankruptcy. Second, the § 16(b) action, as the instant case illustrates, is unlikely to result in a potential call upon the property of the estate because such a suit is brought against the corporation's insiders to disgorge illicit

profits from their private trading in the issuer's shares. *See Egghead.Com, Inc. v. Brookhaven Capital Management Co.,* 340 F.3d 79, 83 (2d Cir.2003). Thus, the corporation's resources would not be implicated in any obligation incurred by the insider in defending or satisfying § 16(b) liability, nor should the corporation be required to indemnify the insider for his § 16(b) violation. *See First Golden Bancorporation v. Weiszmann,* 942 F.2d 726, 729 (10th Cir. 1991) (holding that "the public policy behind section 16(b) renders invalid any attempt by an insider to seek indemnification for his liability under section 16(b).").[6] In fact, rather than burdening and draining the estate with the costs and other exposures of litigation, because the lawsuit is privately prosecuted on behalf of the corporation, the § 16(b) action represents a potential source to augment the estate to the benefit of all its creditors, at no expense to it. The traditional derivative action, on the other hand, may directly affect the property and other resources of the corporation to the extent the corporation itself may be called upon to litigate against any adverse interests asserted by the shareholder, or to defend or indemnify corporate officers who may be the subjects of the action.

Third, the public policy reasons underlying § 16(b) favor enforcement to protect, not just the narrow community of interests of the corporation, but the interests of the general public in full disclosure and honest dealing in transactions involving corporate insiders that may affect the value of investments in the corporation's shares and the integrity of the securities markets. Therefore, undue delay in enforcing a § 16(b) action is not warranted by the general public policy reasons underlying a § 362 stay.

Fourth, § 362 embodies federal statutory policy that, absent explicit provisions in other federal law, presumptively operates to encompass within the debtor's estate and the jurisdiction of the bankruptcy court property deriving from common law rights of the debtor. Insofar as the enforcement right created by § 16(b) is grounded on an independent Congressional mandate, it should not be automatically extinguished by application of a conflicting federal policy without an explicit or compelling expression by Congress that in fact such adjustment of the clashing statutory interests involved represents its intent. The Court has not found such a clear and unambiguous statement of Congressional purpose in either the Bankruptcy Code or in the Act. Thus, the Court is persuaded that the § 16(b) right of action at issue here belongs not to the bankruptcy estate, but to Schaffer, and consequently is not affected by the automatic stay pursuant to § 362. Accordingly, it is hereby

**ORDERED** that Defendant's motion for a stay of this action pursuant to § 362 of

---

**6.** The Second Circuit has suggested that indemnity claims under the Act may proceed where the wrong committed by those seeking indemnity is no greater than ordinary negligence. *See Fromer v. Yogel,* 50 F.Supp.2d 227, 238 n. 8 (S.D.N.Y.1999). However, the Second Circuit has not dealt directly with indemnity claims by parties prosecuted under § 16(b), and as this Court has acknowledged, several other Circuits suggest or hold that indemnity is simply unavailable under the federal securities laws. *See id.* at 238 n. 8.

Moreover, the Court is persuaded that allowing indemnification for § 16(b) violations would frustrate the public policy behind the statute because liable parties would not have to return their short-swing profits to the plaintiff issuer. *See Bunker Ramo–Eltra Corp. v. Fairchild Industries, Inc.,* 639 F.Supp. 409, 418–19 (D.Md.1986) (finding that indemnification clause in stock purchase agreement did not indemnify defendants against § 16(b) action).

284

the Bankruptcy Code is denied; and it is further

**ORDERED** that parties shall proceed to file, in accordance with a stipulated briefing schedule, their respective motions for reconsideration related to the Court's September 2, 2003 Decision and Order; and it is further

**ORDERED** that the parties shall continue with pre-trial preparations pursuant to the schedule previously agreed upon.

**SO ORDERED.**